IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| THE BURLINGTON INSURANCE COMPANY, | ) ) ) | CIVIL NO.  06-00679 JMS/KSC |
| Plaintiff, | ) ) | ORDER GRANTING PLAINTIFF AND COUNTERCLAIM |
| vs. | ) ) | DEFENDANT THE BURLINGTON INSURANCE COMPANY'S |
| UNITED COATINGS MANUFACTURING COMPANY, INC., | ) ) ) ) | MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT AND COUNTERCLAIMANT UNITED |
| Defendant. | ) ) | COATINGS MANUFACTURING COMPANY'S MOTION FOR |
| _____ | ) ) | SUMMARY JUDGMENT |
| UNITED COATINGS MANUFACTURING COMPANY, INC., | ) ) ) | |
| Counterclaimant, | ) ) | |
| vs. | ) ) | |
| THE BURLINGTON INSURANCE COMPANY, | ) ) ) | |
| Counterclaim Defendant. | ) ) | |
| _____ | ) | |

**ORDER GRANTING PLAINTIFF AND COUNTERCLAIM DEFENDANT THE BURLINGTON INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT AND COUNTERCLAIMANT UNITED COATINGS MANUFACTURING COMPANY'S MOTION FOR SUMMARY JUDGMENT**

## I.  **INTRODUCTION**

Defendant and Counterclaimant United Coatings Manufacturing Company, Inc. ("United Coatings") is the named insured of five commercial general liability insurance contracts issued by Plaintiff and Counterclaim Defendant The Burlington Insurance Company ("Burlington").  Burlington and United Coatings both move for summary judgment as to whether Burlington has a duty to defend and/or indemnify United Coatings in an underlying state action brought by four separate Associations of Apartment Owners ("AOAO") in which it is alleged that "Acryclad," a topcoat manufactured and sold by United Coatings, and represented by United Coatings to be 100% acrylic, contained non-acrylic filler and did not meet the AOAO's performance expectations ("AOAO State Action").  As a matter of law, the court finds that Burlington is not obligated to defend or indemnify United Coatings because the claims asserted in the AOAO State Action, including claims for negligent misrepresentation, negligence, and strict products liability, are contract-based.  The court therefore GRANTS Burlington's Motion for Summary Judgment and DENIES United Coatings' Countermotion for Summary Judgment.

## II. __BACKGROUND__

**A.    Factual Background**

*1.    Acryclad*

The AOAO contracted with Sealtech, Inc., a subdivision of Seal Masters of Hawaii ("Sealtech"), to undertake the repair and repainting of several residential buildings ("Project").  The AOAO specified that each Project building was to be covered with an elastomeric wall coating system with a topcoat of low-fill, flexible, waterproof, 100% acrylic paint.  The AOAO explains that it selected a 100% acrylic topcoat in order to protect the elastomeric coating from degradation (including chalking due to ultraviolet exposure), prolong the useful life of the elastomeric coating, and minimize maintenance and repair expenses.

According to the AOAO State Action Complaint, Sealtech selected "Aquathon," an elastomeric system manufactured by United Coatings for use on the Project buildings.  United Coatings then recommended that Sealtech use its "Acryclad" paint as the Project's topcoat.  United Coatings represented that Acryclad was "a 100% acrylic emulsion coating incorporating . . . extreme ultraviolet resistance for long term weather applications" and that it was a "[r]ich, acrylic formulation designed for maximum ultraviolet and weather resistance." AOAO State Action Compl. ¶ 6.  Sealtech allegedly relied on these representations

when purchasing Acryclad as the topcoat for the Project.

At some point following the application of Acryclad, residents began to notice chalking and streaking of the exterior walls, streaking and dirtying of the windows, and chips of fallen paint in the parking lots. *Id.* ¶ 7. An agent of Architectural Diagnostics, Ltd., a firm hired by the AOAO to provide architectural and consulting services for the Project, obtained samples of the Acryclad topcoat. Laboratory tests revealed that Acryclad was not 100% acrylic but instead contained a binder comprised of an acrylic backbone co-polymerized with both acrylonitrile and styrene groups which made Acryclad susceptible to degradation from ultraviolet exposure, leading to the release of pigment particles and the appearance of chalking. *Id.* ¶ 9. By this time, Acryclad had been applied to part or all of each of the Project buildings.

### 2. *The CGL Policy*

United Coatings is the named insured on five commercial general liability policies issued by Burlington effective from April 30, 2002 to April 30, 2007. *See* Courchaine Decl. Exs. A, B, C, D & E. The provisions of each contract relevant to the present dispute are identical and are collectively referred to in this Order as the "CGL Policy."

The CGL Policy "applies to 'property damage' only if . . . [the]

'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" CGL Policy § I(1)(b)(1). "Property damage" is defined under the CGL Policy as

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

CGL Policy § V(17). "Occurrence" is defined by the CGL Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." CGL Policy § V(13).

### 3.   *The AOAO State Action*

On July 11, 2006, the AOAO filed suit against Sealtech and United Coatings in the Circuit Court for the First Circuit of the State of Hawaii, asserting counts of misrepresentation (Count I); strict products liability (Count II); negligence (Count III); breach of contract (Count IV); breach of warranties (Count V); unfair or deceptive acts or practices (Count VI); unfair competition (Count VII); and specific performance (Count VIII). On November 20, 2006, United Coatings tendered defense of the AOAO State Action to Burlington. Burlington agreed to defend subject to a reservation of rights.

5

**B.      Procedural Background**

On December 28, 2006, Burlington filed its Complaint in this court

seeking a declaratory judgment regarding its duties to defend and/or indemnify

United Coatings and asserting entitlement to reimbursement for fees incurred or

paid in its defense of the AOAO State Action.  United Coatings filed its Answer

and Counterclaim on January 26, 2006 and Burlington filed its Answer to the

Counterclaim on February 23, 2007.

Burlington filed its Motion for Summary Judgment on July 6, 2007.

United Coatings filed its Opposition and Countermotion for Summary Judgment

on August 23, 2007.  Burlington filed its Reply and Opposition to the

Countermotion on August 30, 2007 and United Coatings filed its Reply on

September 5, 2007.  The court heard oral arguments on September 10, 2007.

### III.  STANDARDS OF REVIEW

**A.      Summary Judgment Standard**

A party is entitled to summary judgment where there is no genuine issue

of material fact.  Fed. R. Civ. P. 56(c).  When reviewing a motion for summary

judgment, the court construes the evidence -- and any dispute regarding the existence

of facts -- in favor of the party opposing the motion.  *Snead v. Metro. Prop. & Cas.*

*Ins. Co.*, 237 F.3d 1080, 1086 (9th Cir. 2001).  "One of the principal purposes of the

summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, summary judgment will be mandated if the non-moving party "'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (*quoting Celotex*, 477 U.S. at 322).  In insurance disputes, the insurer is only required "to establish the absence of a genuine issue of material fact regarding the question of coverage pursuant to the plain language of the insurance policies and the consequent entitlement to the entry of judgment as a matter of law."  *State Farm Fire & Cas. Co. v. Gorospe*, 106 F. Supp. 2d 1028, 1030 (D. Haw. 2000).

**B.    Diversity Cases Under 28 U.S.C. § 1332**

The court has diversity jurisdiction over this case under 28 U.S.C. § 1332.  Under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity cases apply federal procedural rules and substantive state law.  "In the absence of controlling state law, a 'federal court sitting in diversity must use its own best judgment in predicting how the state's highest court would decide the case.'"  *Tirona v. State Farm Mut. Auto Ins. Co.*, 812 F. Supp. 1083, 1085 (D. Haw. 1993) (citations omitted).  "In so doing, a federal court may be aided by looking to well-reasoned decisions from other jurisdictions."  *Takahashi v. Loomis*

7

*Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980).

## IV.  ANALYSIS

The claims in the AOAO State Action, including misrepresentation, strict products liability, negligence, breach of contract, breach of warranties, unfair or deceptive acts or practices, unfair competition, and specific performance are contract claims or contract-based tort claims and thus not covered by the CGL Policy.[1]

### A.     Duties to Defend and Indemnify Under Hawaii Law

#### 1.     *General Construction of Insurance Contracts*

Under Hawaii law, courts must look to the language of the insurance policy to determine the scope of the insurer's duties.  *See Sentinel Ins. Co. v. First Ins. Co. of Haw.*, 76 Haw. 277, 287, 875 P.2d 894, 904 (1994); *see also Hawaiian*

---

[1] As a preliminary matter, the court finds that the AOAO has associational standing to bring claims for damage to common areas on behalf of its members, but not for the individual parked cars.  Hawaii Revised Statutes ("HRS") § 514A-93 provides:

> Without limiting the rights of any apartment owner, actions may be brought by the manager or board of directors, in either case in the discretion of the board of directors on behalf of two or more of the apartment owners, as their respective interests may appear, with respect to any cause of action relating to the common elements or more than one apartment.

"HRS § 514A-93 is without restriction as to the type of action that may be brought by the board of directors."  *The Ass'n of Apartment Owners of Newton Meadows v. S. Horita Contracting & Bldg. Supplies, Ltd.*, __ Haw. __, 167 P.3d 225, 255 (Haw. 2007).

*Ins. & Guar. Co. v. Fin. Sec. Ins. Co.*, 72 Haw. 80, 87, 807 P.2d 1256, 1260 (1991)

("In the context of insurance coverage disputes, we must look to the language of

the insurance policies themselves to ascertain whether coverage exists, consistent

with the insurer and insured's intent and expectations.").  The Hawaii Supreme

Court has offered the following rules for interpreting provisions of insurance

policies:

> [I]nsurance policies are subject to the general rules of contract
> construction; the terms of the policy should be interpreted
> according to their plain, ordinary, and accepted sense in
> common speech unless it appears from the policy that a
> different meaning is intended.  Moreover, every insurance
> contract shall be construed according to the entirety of its terms
> and conditions as set forth in the policy.
>
> Nevertheless, adherence to the plain language and literal
> meaning of the insurance contract provisions is not without
> limitation.  We have acknowledged that because insurance
> policies are contracts of adhesion and are premised on standard
> forms prepared by the insurer's attorneys, we have long
> subscribed to the principle that they must be construed liberally
> in favor of the insured and any ambiguities must be resolved
> against the insurer.  Put another way, the rule is that policies
> are to be construed in accord with the reasonable expectations
> of a layperson.

*Dairy Rd. Partners v. Island Ins. Co., Ltd.*, 92 Haw. 398, 411-12, 992 P.2d 93,

106-07 (2000) (internal citations, quotation marks, brackets, and ellipses omitted);

*Hawaiian Ins. & Guar. Co.*, 72 Haw. at 87-88, 807 P.2d at 1260 ("[W]e shall

construe insurance policies according to their plain, ordinary, and accepted sense

in common speech unless it appears that a different meaning was intended. Moreover, this court has stated that it is committed to enforce 'the objectively reasonable expectations' of parties claiming coverage under insurance contracts which are 'construed in accord with the reasonable expectations of a layperson.'" (citations omitted)); *see also Burlington Ins. Co. v. Oceanic Design & Constr., Inc.*, 383 F.3d 940, 945 (9th Cir. 2004) ("In Hawaii, the terms of an insurance policy are to be interpreted according to their plain, ordinary, and accepted sense in common speech.").

When reviewing an insurance contract, a court applying Hawaii law "should look no further than the four corners of the document to determine whether an ambiguity exists." *State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc.*, 90 Haw. 315, 324, 978 P.2d 753, 762 (1999). A contract term is ambiguous only if it is capable of being reasonably understood in more than one way. *Cho Mark Oriental Food, Ltd. v. K & K Int'l*, 73 Haw. 509, 520, 836 P.2d 1057, 1063-64 (1992). "[T]he parties' disagreement as to the meaning of a contract or its terms does not render clear language ambiguous." *Pac. Rent-All*, 90 Haw. at 324, 978 P.2d at 762.

## 2. *Duty to Defend*

"The insurer's duty to defend its insured is contractual in nature and

this court must look to the language of the particular policy involved to determine the scope of that duty." *Commerce & Indus. Ins. Co. v. Bank of Haw.*, 73 Haw. 322, 325, 832 P.2d 733, 735 (1992). Hawaii applies the "complaint allegation rule" where the insurance policy must be compared to the claims against the insured to determine whether a duty to defend is owed. *See Pancakes of Haw., Inc. v. Pomare Props. Corp.*, 85 Haw. 286, 291, 944 P.2d 83, 88 (1997). Thus,

> [t]he focus is on the alleged claims and facts. The duty to defend "is limited to situations where the pleadings have alleged claims for relief that fall within the terms of coverage of the insurance contract. 'Where pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend.'"[2]

*Burlington Ins. Co.*, 383 F.3d at 944 (*quoting Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co.*, 76 Haw. 166, 169, 872 P.2d 230, 233 (1994)). As the Hawaii Supreme Court recently explained, an insurer's obligation to defend is

> broader than the duty to pay claims and arises wherever there is the mere *potential* for coverage. In other words, the duty to defend rests primarily on the *possibility* that coverage exists. This possibility may be remote but if it exists, the insurer owes

---

[2] The duty to defend is determined at the time of tender. *Dairy Rd. Partners*, 92 Haw. at 422 n.14, 992 P.2d at 117 n.14. Under Hawaii law, if the underlying lawsuit alleges facts within coverage, an insurer may not rely on facts extrinsic to the underlying complaint "that may be subject to dispute in the underlying lawsuit as a basis for disclaiming its duty to defend. . . ." *Id.* at 422, 992 P.2d at 117. Thus, "the insurer may only disclaim its duty to defend by showing that *none* of the facts upon which it relies might be resolved differently in the underlying lawsuit." *Id.* This rule, however, has an exception -- an insurer may rely on extrinsic facts to disclaim liability if those facts will not be resolved in the underlying lawsuit. *Id.*

the insured a defense.  All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured.

Accordingly, in connection with the issue of its duty to defend, [the insurer bears] the burden of proving that there is no genuine issue of material fact with respect to whether a *possibility* exists that the insured would incur liability for a claim covered by the policy.  In other words, the insurer is required to prove that it would be *impossible* for the claimant to prevail against the insured in the underlying lawsuit on a claim covered by the policies.  Conversely, the insured's burden with respect to its motion for summary judgment is comparatively light, because it has merely to prove that a *possibility* of coverage exists.

*Tri-S Corp. v. Western World Ins. Co.*, 110 Haw. 473, 488, 135 P.3d 82, 97 (2006) (*quoting Dairy Rd. Partners*, 92 Haw. at 412-13, 992 P.2d at 107-08) (brackets omitted; emphasis in original).  "[W]here a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage."  *Hawaiian Holiday Macadamia Nut Co.*, 76 Haw. at 169, 872 P.2d at 233; *see also State Farm Fire & Cas. Co. v. Lau*, 2007 WL 1288153, at *3 (D. Haw. Apr. 30, 2007).

### 3.    *Duty to Indemnify*

Under Hawaii law, an insurer claiming no duty to indemnify under a

policy at the summary judgment phase

> is not required to disprove any possibility that its insured might
> be liable for a claim asserted in the underlying lawsuits.
> Rather, without reference to what the eventual outcome of the
> underlying lawsuits might actually be, the insurer is required
> only to establish the absence of a genuine issue of material fact
> regarding the question of coverage pursuant to the plain
> language of the insurance policy and the consequent
> entitlement to the entry of judgment as a matter of law.

*Tri-S Corp.*, 110 Haw. at 488, 135 P.2d at 97 (*quoting Dairy Rd. Partners*, 92

Haw. at 412-13, 992 P.2d at 107-08) (brackets and emphasis omitted).

**B.    Burlington Is Entitled to Summary Judgment Because the Claims
Asserted in the AOAO State Action Are Contract Claims or Are
Contract-Based Tort Claims**

Burlington argues that it is not required to defend or indemnify

United Coatings because the claims asserted in the AOAO State Action are either

contract claims or are contract-based tort claims.[3]   The court agrees.

---

[3] United Coatings argues that the AOAO State Action claims are not contract-based because there were no contracts between it and the AOAO. This argument is ultimately unavailing. The AOAO was the intended and known third-party beneficiary to the contract and warranties between United Coatings and Sealtech. *See* AOAO State Action Compl. ¶ 25 (alleging that the various AOAOs were "third-party beneficiaries of the contracts between [United Coatings and Sealtech] for the purpose of the Acryclad '100% Acrylic Emulsion Coating' used in the respective projects."). As such, the AOAO has standing to sue for breach of those contracts and warranties. *See, e.g.*, *Ass'n of Apartment Owners of Newton Meadows*, 167 P.3d at 262-65 (discussing third party beneficiary status and right to sue); *Ontai v. Straub Clinic & Hospital, Inc.*, 66 Haw. 237, 249-52, 659 P.2d 734, 743 (1983) (finding that patient could bring action as a third party beneficiary of an implied warranty between the manufacturer of an X-ray table and the Straub hospital). HRS § 490:2-318 states:

(continued...)

The Ninth Circuit, addressing the coverage of commercial general liability insurance contracts, expressed agreement with a line of District of Hawaii cases finding that under Hawaii law, "contract and contract-based tort claims are not within the scope of CGL policies." *Burlington Insurance Co.*, 383 F.3d at 949. As the court explained:

> "General liability policies . . . are not designed to provide contractors and developers with coverage against claims [that] their work is inferior or defective. The risk of replacing and repairing defective materials or poor workmanship has generally been considered a commercial risk which is not passed on to the liability insurer. . . . [L]iability coverage comes into play when the insured's defective materials or work cause injury to property other than the insured's own work or products."

*Id.* at 948 (*quoting Anthem Elec., Inc. v. Pac. Employers Ins. Co.*, 302 F.3d 1049, 1057 (9th Cir. 2002)); *see also WDC Venture v. Hartford Accident & Indem. Co.*, 938 F. Supp. 671, 679 (D. Haw. 1996) ("'There is simply no reason to expect that

---

[3](...continued)
> Third party beneficiaries of warranties express or implied. A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section with respect to injury to the person of an individual to whom the warranty extends.

HRS § 490:2-318 is based on the Uniform Commercial Code ("UCC") § 2-318. The 1962 official comments to UCC § 2-318 explain that "[t]he purpose of this section is to give the buyer's family, household and guests the benefit of the same warranty which the buyer received in the contract of sale, thereby freeing any such beneficiaries from any technical rules as to 'privity.'"

such a liability would be covered under a comprehensive liability policy which

has, as its genesis, the purpose of protecting an individual or entity from liability

for essentially accidental injury to another individual, or property damage to

another's possessions, even if, perhaps, the coverage of the policy has been

expanded to cover other non-bodily injuries that *sounded in tort*.'" (*quoting*

*Toombs NJ Inc. v. Aetna Cas. & Sur. Co.*, 591 A.2d 304, 306 (Pa. Super. 1991)).

Contract-based claims -- including claims sounding in tort which are

predicated upon, stemming directly from, or derivative of, United Coatings'

contracts, contracts of sales, and warranties -- are not covered under the CGL

Policy.[4]  Where United Coatings "breach[ed] its contractual duty . . . , facing a

---

[4]  Warranties, whether express or implied, are contract claims.  Hawaii's UCC (HRS Chapter 490) Article II, Part 3, is entitled "General Obligation and Construction of Contract." HRS § 490:2-313 covers express warranties by affirmation, promise, description or sample:

> (1) Express warranties by the seller are created as follows:
>     (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>     (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>     (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's

(continued...)

lawsuit for that breach is a reasonably foreseeable event." *Burlington Ins. Co.*, 383 F.3d at 948.  As the Ninth Circuit observed, "[a]llowing recovery for disputes between parties in a contractual relationship over quality of work performed would convert [a] CGL policy into a professional liability policy or a performance bond." *Id.* at 949; *see also WDC Venture*, 938 F. Supp. at 679 ("A breach of contract is an uninsurable activity, as to hold otherwise would invite . . . misbehavior."); *Toombs NJ Inc.,* 591 A.2d at 306 ("To allow indemnification under the facts presented here would have the effect of making the insurer a sort of silent business partner subject to great risk in the economic venture without any prospects of sharing in the economic benefit.  The expansion of the scope of the insurer's liability would be enormous without corresponding compensation.").

Courts have employed different terms to articulate this "contract-based" standard, including "arising only from the contract," "stemming directly

---

[4](...continued)
opinion of commendation of the goods does not create a warranty.

Hawaii law also recognizes implied warranties of fitness for particular purposes:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

HRS § 490:2-315

from the contract," "derivative of the contractual relationship," "based on breach of contract," "claims dependent upon the existence of an underlying contract," "contract-like claims," "other than a breach of that contractual duty," and "but for the contractual relationship."  *See generally Burlington Ins. Co.*, 383 F.3d at 948, 953, 955; *Lau*, 2007 WL 1288153, at *4; *State Farm Fire & Cas. Co. v. Scott*, 2007 U.S. Dist. Lexis 8255, at *24 (D. Haw. Jan. 24, 2007); *CIM Ins. Corp. v. Mid-Pac Auto Ctr*, 108 F. Supp. 2d 1092, 1100 (D. Haw. 2000); *CIM Ins. Corp. v. Masamitsu*, 74 F. Supp. 2d 975, 987 (D. Haw. 1999); *WDC Venture*, 938 F. Supp. at 677, 679.  Whatever the phrasing, the relevant query is whether the *genesis* or *origin* of the underlying claims, including those sounding in tort, is premised on a contractual relationship or is based on an independent tort claim[5] under state law.

The AOAO's claims for breach of contract (Count IV); breach of warranties (Count V); unfair or deceptive acts or practices (Count VI); unfair competition (Count VII); and specific performance (Count VIII) clearly stem from United Coatings' contracts and warranties, and not from any independent duty originating in tort.  The court now examines in greater detail whether the

---

[5] "Hawaii law will *not* allow a recovery in tort, including a recovery of punitive damages, in the absence of conduct that (1) violates a duty that is independently recognized by the principles of tort law and (2) transcends the breach of the contract."  *Francis v. Lee Enters., Inc.*, 89 Haw. 234, 244, 971 P.2d 707, 717 (1999).

17

negligence claims (including negligent misrepresentation in Count I and negligence in Count III) and strict products liability claim (Count II) are premised on a contractual relationship or are based on an independent tort claim under state law.

### 1.   Counts I & III: Negligent Misrepresentation and Negligence

The AOAO State Action asserts that United Coatings "negligently, recklessly, intentionally and/or fraudulently represented" that Acryclad was 100% acrylic and that United Coatings "breached the duty it owed [the AOAO] to exercise reasonable care, skill, judgment and diligence in the design, manufacture, labeling, marketing, sale and/or shipment" of Acryclad.  AOAO State Action Compl. ¶¶ 9, 22.[6]  The AOAO bases its claim of negligent misrepresentation on Sealtech's reliance upon United Coatings' representations and warranties that Acryclad was 100% acrylic.[7]  Because the AOAO's claim for negligent

---

[6]  To the extent the AOAO State Action Complaint alleges intentional conduct, any resulting injury was not caused by an "accident" and is therefore outside the coverage of the CGL Policy.  *See Hawaiian Holiday Macadamia Nut Co.*, 76 Haw. at 170, 872 P.2d at 234.

[7]  Under Hawaii law,

> a plaintiff claiming negligent misrepresentation must show that: "(1) false information [is] supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation." *Blair v. Ing*, 95 Haw. 247, 269, 21 P.3d 452, 474 (2001) (*citing Kohala Agriculture v. Deloitte &*

(continued...)

misrepresentation depends upon the existence of United Coatings' underlying

contract, contract of sale, or warranties, the claim for negligent misrepresentation

is contract-based.  Similarly, liability for the AOAO's negligence claim depends

upon the existence of United Coatings' contracts and warranties because without

them, United Coatings would not have a duty of care towards the AOAO.  The

AOAO's negligent misrepresentation and negligence claims are excluded from

coverage under the CGL Policy.  *Accord CIM Ins. Corp.*, 74 F. Supp. 2d at 986-87

("The negligent misrepresentation claim also did not trigger a duty to defend.

Under the factual allegations of the counterclaim, it is clear that any claim of such

'negligence' stemmed from intentional acts or contract-based claims.").

> ### 2.    *Count II:  Strict Products Liability*

The AOAO State Action alleges that United Coatings is strictly liable

because it manufactured and sold a defective product which resulted in harm to the

exterior walls, windows, and parking lots of the Project buildings.  Generally

speaking, strict products liability claims are tort-based.  *See State of Hawaii ex rel.*

*Bronster v. U.S. Steel Corp.*, 82 Haw. 32, 43, 919 P.2d 294, 305 (1996) ("An

---

[7](...continued)
> *Touche*, 86 Haw. 301, 323, 949 P.2d 141, 163 (1997) and RESTATEMENT
> (SECOND) OF TORTS § 552 (1977)).

*Zanakis-Pico v. Cutter Dodge, Inc.*, 98 Haw. 309, 321, 47 P.3d 1222, 1234 (2002).

action in manufacturers' products liability is primarily tortuous in nature."

(*quoting Waggoner v. Town & Country Mobile Homes, Inc.*, 808 P.2d 649, 652

(Okla. (1990))); *Larsen v. Pacesetter Sys., Inc.*, 74 Haw. 1, 21, 837 P.2d 1273,

1284 (1992) ("Thus the tort action for strict products liability is the warranty

action for tangible injury to persons and property stripped of its contractual

mask."). The AOAO, however, does not claim that Acryclad was inherently

defective or defective per se; instead, the AOAO alleges that Acryclad was

unsuited for the purpose for which it was purchased and that the composition of

the paint was not as represented or warranted.[8] The AOAO's strict products

liability claim is a contract or warranty-based claim. Such artful pleading will not

trigger coverage. *See Dairy Road Partners*, 92 Haw. at 417, 992 P.2d at 112

(cautioning courts to "ensure that plaintiffs could not, through artful pleading,

bootstrap the availability of insurance coverage under an insured defendant's

policy by purporting to state a claim for negligence based on facts that, in reality,

---

[8] Count II recites, three separate times, that the paint was "ACRYCLAD 100% ACRYLIC EMULSION COATING" and appears to rely on this fact in support of its strict products liability claim. The AOAO State Action is clearly premised on the representations made that this specific paint was a 100% acrylic emulsion when in fact it was not. In other words, the paint was purchased *because* it was supposedly 100% acrylic. And *because* it was not 100% acrylic (according to the AOAO State Action), damage resulted. Had the paint been represented to be a binder comprised of an acrylic backbone co-polymerized with both acrylonitrile and styrene groups, the AOAO presumably would have be aware that it was susceptible to degradation from ultraviolet exposure, and thus not suitable for the AOAO topcoat.

reflected manifestly intentional, rather than negligent conduct."); *Bayudan v. Tradewind Ins. Co.*, 87 Haw. 379, 388, 957 P.2d 1061, 1070 (Haw. Ct. App. 1998) ("An insurer's duty to defend is not triggered by labeling one claim in a complaint 'negligence' when the facts in the complaint do not demonstrate alleged loss resulting from negligence or alleged loss caused by an occurrence, but instead demonstrate alleged losses for which there was no duty to defend." (citation and internal quotation marks omitted)).

In light of the foregoing, the court concludes that the claims asserted in the AOAO State Action are contract-based. The claims, including those pled as torts, stem directly from United Coatings' alleged misrepresentation of Acryclad as 100% acrylic; each is dependent upon the existence of United Coatings' contracts, contracts of sale, warranties, or representations; and none of the claims alleges an independent duty which transcends the underlying contracts or warranties. Burlington does not have a duty to defend or indemnify United Coatings in the AOAO State Action.

**C.    Burlington Is Entitled to Summary Judgment Because the "Economic Loss Rule" Bars the AOAO's Strict Products Liability Claims**

As an alternate basis for its ruling, the court finds that the strict products liability claim as pled in the AOAO State Action Complaint is not viable

21

under state law.  Strict products liability is a judicially-created cause of action in

Hawaii.  In *Stewart v. Budget Rent-A-Car Corp.*, 52 Haw. 71, 470 P.2d 240

(1970), the Hawaii Supreme Court adopted a doctrine of strict liability for product

defects,[9] finding that

> [t]he leading arguments for the adoption of a rule of strict
> products liability have been that the public interest in human
> life and safety requires the maximum possible protection that
> the law can muster against dangerous defects in products; that
> by placing the goods on the market the maker and those in the
> chain of distribution represent to the public that the products

---

[9]  Products liability claims are commonly based on theories of either a defect in design or a defect in manufacturing.  The Hawaii Supreme Court has adopted a dual pronged test for plaintiffs to prove a design defect.  Under that test,

> a product may be found defective in design if the plaintiff establishes that
> the product failed to perform as safely as an ordinary consumer would
> expect when used in an intended or reasonably foreseeable manner.
> Second, a product may alternatively be found defective in design if the
> plaintiff demonstrates that the product's design proximately caused his
> injury and the defendant fails to establish, in light of relevant factors, that,
> on balance, the benefits of the challenged design outweigh the risk of
> danger inherent in such design.

*Ontai*, 66 Haw. at 242, 659 P.2d at 739-40 *(quoting Barker v. Lull Eng. Co., Inc.*, 20 Cal. 3d 413, 432, 573 P.2d 443, 455-56 (1978)).  A manufacturing defect is found "when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product."  RESTATEMENT (THIRD) OF TORTS § 2(a), cmt. a.

Under Hawaii law, "a strict products liability action does not require a showing that the defendant was negligent in manufacturing or distributing the product.  Instead, the plaintiff need only show that the seller is engaged in the business of selling the product, that the product contains a defect dangerous to the user or consumer, and that the defect is the cause of the injury.  A product is dangerously defective if it does not meet the reasonable expectations of the ordinary consumer or user as to its safety."  *Johnson v. Raybestos-Manhattan, Inc.*, 69 Haw. 287, 288, 740 P.2d 548, 549 (1987) (internal citation omitted) (on certified question from the Ninth Circuit).

> are suitable and safe for use; and that the burden of accidental injuries caused by defective chattels should be placed upon those in the chain of distribution as a cost of doing business and as an incentive to guard against such defects.
>
> Therefore, we adopt the rule that one who sells or leases a defective product which is dangerous to the user or consumer or to his property is subject to liability for physical harm caused by the defective product to the ultimate user or consumer, or to his property, if (a) the seller or lessor is engaged in the business of selling or leasing such product, and (b) the product is expected to and does reach the user or consumer without substantial change in its condition after it is sold or leased.  This is essentially the rule adopted in the Second Restatement of Torts Section 402A.

*Stewart*, 52 Haw. at 74-75, 470 P.2d at 243 (footnotes omitted).

Years later, the Hawaii Supreme Court limited the scope of the strict products liability doctrine by adopting the so-called "economic loss rule" which "applies to bar recovery of pure economic loss in actions based on products liability."  *U.S. Steel Corp.*, 82 Haw. at 45, 919 P.2d at 307 (1996).  As the Hawaii Supreme Court explained:

> The logic and policy considerations supporting the adoption of the economic loss rule in the products liability context are compelling.  As the [Supreme Court] in *East River* noted: "Products liability grew out of a public policy judgment that people need more protection from dangerous products than is afforded by the law of warranty.  It is clear, however, that if this development were allowed to progress too far, contract law would drown in a sea of tort."

*Id.* at 43, 919 P.2d at 305 (*quoting East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866 (1986) (internal citations omitted; emphasis omitted)).

Thus,

> "[t]he economic loss rule marks the fundamental boundary between the law of contracts, which is designed to enforce expectations created by agreement, and the law of torts, which is designed to protect citizens and their property by imposing a duty of reasonable care on others.  The economic loss rule was designed to prevent disproportionate liability and allow parties to allocate risk by contract."

*City Express, Inc. v. Express Partners*, 87 Haw. 466, 469-70, 959 P.2d 836, 839-40 (1998) (*quoting Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist.*, 881 P.2d 986, 990 (Wash. 1994)).

Recently, the Hawaii Supreme Court extended the reach of the economic loss rule, holding that it precludes purely economic losses including "consequential damages" to property other than the allegedly defective product. *The Ass'n of Apartment Owners of Newton Meadows*, 167 P.3d at 287. ("Moreover, even assuming *arguendo* that the cracked floor tiles, demising walls, skewed door jambs and windows, and damage caused by termites entering through the cracks were caused by the allegedly defective floor slabs, such consequential damages do not constitute damage to 'other property.'").

With this background, the court determines that the AOAO State Action fails to forward a viable tort-based strict liability claim under Hawaii law. The AOAO State Action does not assert any claims for personal injuries and as

24

such does not trigger an independent public policy interest in safety that would transcend the contractual nature of the underlying dispute and place the AOAO's strict products liability claim within the scope of Hawaii tort law. *See U.S. Steel Corp.*, 82 Haw. at 44, 919 P.2d at 306 (finding that the rationale for a products liability action "is founded upon public interest in human safety. . . . This liability is independent of UCC warranty provisions because recovery under manufacturers' products liability arises from a duty to the public rather than from a contractual relationship." (*quoting Waggoner*, 808 P.2d at 652)).  Instead, the only injuries alleged in the AOAO State Action are to the Project's walls, windows, and parking lots.  These harms resulted from Acryclad's alleged defect and constitute pecuniary consequential damage barred by Hawaii's economic loss rule.[10]

---

[10]  In *United States Steel*, the Hawaii Supreme Court held that the economic loss rule did not bar a claim for negligent misrepresentation under Section 552 of the Restatement of Torts (Second).  82 Haw. at 40, 919 P.2d at 302.  The Hawaii Supreme Court later distinguished this ruling because "the issue of whether contractual privity would prevent the application of section 552 [of the Restatement] was not presented" because "[n]o contract existed between the steel manufacturer and the State." *City Express*, 87 Haw. at 469-70, 959 P.2d at 839-40.  Although recognizing that Section 552 of the Restatement contemplates a tort action for negligent misrepresentation by a contracting party, the Hawaii Supreme Court held that "in the context of construction litigation regarding the alleged negligence of design professionals, a tort action for negligent misrepresentation alleging damages based purely on economic loss is not available to a party in privity of contract with a design professional" thus "encourag[ing] the parties to negotiate the limits of liability in a contractual situation, . . . hold[ing] the parties to the terms of their agreement . . . [and] preserv[ing] the right of design professionals to limit their exposure to liability through contract." *Id.*  In *The Association of Apartment Owners of Newton Meadows*, the Hawaii Supreme Court appeared to extend its holding to bar economic recovery for negligence claims based on violations of contract specifications even where there was no privity of contract "when allowing such recovery would blur the distinction between contract and tort law."  167 P.3d at 285.  Given this precedent, the court observes that the economic loss rule may

(continued...)

# V.  CONCLUSION

For all of the foregoing reasons, the court GRANTS Burlington's

Motion for Summary Judgment and DENIES United Coatings' Countermotion

for Summary Judgment as to Counts I and II of the Complaint.  This Order does

not address Count III, the remaining claim in the Complaint.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 15, 2007.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*The Burlington Insurance Co. v. United Coatings Manufacturing Co., Inc.*, Civ. No. 06-00679
JMS/KSC, Order Granting Plaintiff and Counterclaim Defendant The Burlington Insurance
Company's Motion for Summary Judgment and Denying Defendant and Counterclaimant United
Coatings Manufacturing Company's Motion for Summary Judgment

---

[10](...continued)
also exclude the AOAO's claims for negligent misrepresentation and negligence.  However,
given the court's finding that the AOAO's negligent misrepresentation and negligence claims
stem directly from United Coatings' contracts and warranties, the court declines to address this
question.